# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

| | |
|---|---|
| CRYSTAL MCLEMORE, ET AL. | Civil Action No. 6:19-0751 |
| versus | Judge Michael J Juneau |
| MARK GARBER, ET AL. | Magistrate Judge Carol B Whitehurst |

## REPORT AND RECOMMENDATION

Before the undersigned, on referral from the district judge, is the Rule 12(b)(6) Motion to Dismiss filed by defendant Quinceyeta Hamilton ("Hamilton") [Doc. 92]. The plaintiffs oppose the motion [Doc. 103], and Hamilton filed a reply brief [Doc. 117]. For the following reasons, it is RECOMMENDED that the Motion to Dismiss be GRANTED.

## FACTUAL BACKGROUND

The instant lawsuit arises out of an incident occurring on June 15-16, 2018 at the Lafayette Parish Correctional Center ("LPCC"), where the decedent, Ronald Walker, was allegedly found deceased as the result of a drug overdose. It appears to be undisputed that Ronald Walker, a pre-trial detainee, presented for intake at LPCC as having taken sleep medication just prior to his arrest. After completing an intake medical clearance by a nurse, Walker was placed in a holding cell. He died some hours later. All of the defendants have argued throughout this litigation that,

1

unbeknownst to any officials at LPCC, Walker had ingested codeine (instead of sleep medication) prior to his arrest.

On June 13, 2019, the plaintiffs filed suit against Lafayette Parish Sheriff Mark Garber, as well as numerous Lafayette Parish Sheriff's Office ("LPSO") deputies and various medical professionals, including Hamilton, a licensed practical nurse ("LPN"). With respect to Hamilton, the plaintiffs allege:

> LPN Quinceyeta Hamilton ("Hamilton") is an adult citizen of the state of Louisiana residing in the Western District of Louisiana. At all relevant times she was employed by ADVANTAGE as either a health care provider and/or supervisor of other ADVANTAGE defendant LPN's. As a supervisor she was responsible for training and supervising the ADVANTAGE defendant LPN's. She also acted under the direction and supervision of defendants, Sheriff Garber, Dr. Voitier, and other unknown ADVANTAGE supervisors. In the alternative, LPN Hamilton was employed by ADVANTAGE as a health care provider at LPCC and was in charge of conducting intake screening and/or treatment, including the care of prisoners, including Walker.

Thereafter, on November 4, 2020, the plaintiff filed a Second Supplemental and Amended Complaint [Doc. 75], wherein they allege the following with respect to Hamilton and certain other medical personnel:

- 43. The defendants, LPNs WILTZ, BERNARD, BERGEAUX, CLAY and **HAMILTON**, failed to investigate Walker's condition during their respective shifts on 06/15/18 and 06/16/18 even though SAMUEL had advised the medical department of Walker's Klonopin use, tachycardia, hyperhidrosis, lethargy and loss of consciousness as reported in the LPCC Initial Acceptance Form.

- 44. The defendants LPNs WILTZ, BERNARD, BERGEAUX, CLAY and **HAMILTON** failed, when they became aware of Walker's conditions previously described, to directly observe Walker, or order the direct

observation of Walker, or order the immediate transfer of Walker to a hospital emergency room, or to immediately contact or communicate to a physician, nurse practitioner or registered nurse Walker's condition.

- 45. The defendants, LPNs WILTZ, BERNARD, BERGEAUX, CLAY and **HAMILTON**, failed to actually conduct any wellness checks of Walker prior to his death.

- 46. The defendants, LPNs WILTZ, BERNARD, BERGEAUX, CLAY and **HAMILTON**, failed, if they did conduct any monitoring or wellness checks of Walker, to recognize that he was dying.

- 47. The defendants, LPNs WILTZ, BERNARD, BERGEAUX, CLAY and **HAMILTON**, failed to order or perform a detox screen of Walker.

- 48. The defendants, LPNs WILTZ, BERNARD, BERGEAUX, CLAY and **HAMILTON**, failed to order, follow or perform a CIWA/COWS protocol on Walker to assess his condition.

- 50. The defendants, LPNs WILTZ, BERNARD, BERGEAUX, CLAY, **HAMILTON** and/or DR. VOITIER**,** failed, when they were made aware of Walker's condition by SAMUEL or others, to take the necessary steps to ensure Walker's safety.

- 52. In the alternative, upon information and belief, Lt. Miller and Sgt. White were advised by Lt. Segura and others of Walker's condition.  Upon information and belief, they in turn notified defendants WILTZ, BERNARD, BERGEAUX, CLAY and **HAMILTON** yet none of these defendant health care providers took steps to address the serious medical needs of Walker. These failures on the part of the medical defendants reflect their deliberate indifference to Walker's serious medical needs and resulted in this death.

- 54.  All of the actions of the defendants, SAMUEL, WILTZ, BERNARD, BERGEAUX, CLAY and **HAMILTON**, identified in paragraphs 19 through 53 reflect their deliberate indifference to Walker's serious medical needs which deliberate indifference resulted in Walker's death.

- 55. The defendants, LPNs SAMUEL, WILTZ, BERNARD, BERGEAUX, **HAMILTON** and CLAY, failed or refused to conduct any well-being checks

3

- on Walker which included observation or monitoring of the visibly drugged and unconscious Walker. Upon information and belief, Walker lost consciousness at LPCC shortly after his arrival on 6/15/18 between 1930 hrs. and 2000 hrs. He remained unconscious thereafter.

- 56. At the end of SAMUEL's shift at approximately 0600 hrs. on 06/16/18, LPN SAMUEL advised defendants WILTZ, BERNARD, BERGEAUX, **HAMILTON** and CLAY that Walker had taken sleeping medications and would be sleeping all day. The failure of WILTZ, BERNARD, BERGEAUX, **HAMILTON** and CLAY to render aid and health care to Walker under the circumstances is deliberate indifference to his serious medical needs and resulted in his death.[1]

Thus, with respect to all of the LPNs who are defendants in this lawsuit, other than Shelly Samuel, the allegations stem from information that was allegedly provided to all of the medical personnel by Samuel, who was the intake nurse on the night in question. The plaintiffs contend that Samuel properly identified and charted Walker's medical conditions – his use of prescription Klonopin, elevated heart rate, sweating, and lethargy and drowsiness -- but refused to conduct a suicide screening or to monitor Walker. Plaintiffs contend that such inaction was deliberately indifferent to a serious medical need and constituted medical malpractice/negligence. Furthermore, plaintiffs allege the LPNs who subsequently came on shift after Samuel, including Hamilton, failed to observe or monitor Walker, failed to transfer Walker to an emergency room or contact a physician, and failed to

---

[1] See Second Supplemental and Amended Complaint, Doc. 75, at para 43-56.

4

perform a detox screen of Walker or to perform CIWA/COWS protocol to assess his condition.

In the instant motion, Hamilton argues the plaintiffs fail to state a §1983 claim against her because the facts they assert do not support their claim that she acted with deliberate indifference to Walker's alleged medical needs. To support her argument, Hamilton argues:

- She did not participate in the initial in-take process. Samuel completed all in-take procedures.

- Walker expressly – but falsely -- denied to the arresting officer, intake officer, and Samuel that he had taken any drugs or consumed any alcohol.

- Walker falsely advised the arresting officer and Samuel that he had taken sleep medicine, specifically Klonopin, immediately before his arrest.

- Walker advised Samuel that his only existing medical problem was "stress." Thus, based upon the information provided by Walker himself, it was not alarming or concerning that Walker would appear drowsy, nor was it alarming or concerning that Walker slept throughout the night in his holding cell. This action was consistent with a person who took a prescribed sleeping pill at 6:45 in the evening.

In short, Hamilton argues that she was not provided with sufficient information to have knowledge that Walker was at risk of serious harm. According to Hamilton, the facts show that Walker was asleep in his cell, at night, after reportedly taking a prescribed sleeping medication. Hamilton contends that without any reason to suspect harm, there are no facts to support the allegation that she deliberately ignored his medical needs.

5

## LAW AND ANALYSIS

### A. Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, the plaintiffs must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232–33 (5th Cir.2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir.1996). But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 129 S.Ct. at 1949–50.

A legally sufficient complaint must establish more than a "sheer possibility" that plaintiffs' claim is true. *Id*. It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Twombly*, 550 U.S. at 555. In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiffs' claim. *Lormand*, 565 F.3d at 255–57. If there are insufficient factual allegations to raise a right to relief above the speculative level, *Twombly*, 550 U.S. at 555, or if it is apparent from

the face of the complaint that there is an insuperable bar to relief, *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Carbe v. Lappin*, 492 F.3d 325, 328 & n. 9 (5th Cir.2007), the claim must be dismissed.

In considering a motion to dismiss for failure to state a claim, a district court must limit itself to the contents of the pleadings, including attachments thereto. Fed.R.Civ.P. 12(b)(6). The Fifth Circuit allows courts to consider "[d]ocuments that a defendant attaches to a motion to dismiss [to be] considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000), citing *Venture Assocs. Corp. v. Zenith Data Sys. Corp.,* 987 F.2d 429, 431 (7th Cir.1993).

In their opposition brief, the plaintiffs object to the Court's consideration of the documents attached to the pending motion, which were filed at Rec. Doc. 92-2. These documents include the Lafayette Parish Correctional Center Initial Acceptance Form ("IAF") which was filled out by Deputy Justin Broussard and Samuel on June 15, 2018, the Nurse Protocol form which was prepared by Samuel on June 16, 2018, the affidavit of arrest, the coroner's report and the LPSO control logs. Plaintiffs argue that these documents are unreliable because they have not been

authenticated, however plaintiffs acknowledge that they rely on the IAF and the Nurse Protocol in support of their allegations.[2]

Review of the Second Supplemental and Amended Complaint shows that the plaintiffs refer to the IAF and the Nurse Protocol throughout their complaints in support of their claims. Courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss and, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice. *See, e.g., Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322, 127 S. Ct. 2499, 2509, 168 L. Ed. 2d 179 (2007). *Accord Funk v. Stryker Corp.*, 631 F.3d 777 (5th Cir. 2011) Because the plaintiffs relied extensively upon the IAF and the Nurse Protocol in their Second Supplemental and Amended Complaint, the undersigned has considered them in making the recommendations made herein.[3]

---

[2] Plaintiffs argue that these documents cannot be considered in ruling on the pending motion to dismiss, and that before the documents can be considered, the motion would need to be converted to a motion for summary judgment, to which they object. *See Thompson v. Ackal*, WDLA # 15–02288 (March 9, 2016), 2016 WL 1394352 at *3 (refusing to consider unauthenticated documents attached to defendants' motion to dismiss); *Ace American Ins. Co. v. Huntsman Corp.*, 255 F.R.D. 179, 188-90 (S.D. Tex. 2008) (refusing to consider documents attached to defendants' motion to dismiss).

[3] Although it appears that plaintiffs also relied on information contained in some of the other LSPO documents which are attached as exhibits to Hamilton's motion, the Court finds those documents unnecessary to the resolution of this motion and, as such, has not considered them.

8

### B. Analysis

### 1. 1983 claim for deliberate indifference to serious medical need

Pretrial detainees have a constitutional right not to have confining officials treat their serious medical needs with deliberate indifference, under the Due Process Clause of the Fourteenth Amendment. *Estate of Allison v. Wansley*, 524 F. App'x 963, 970 (5th Cir. 2013), *citing Jacobs v. W. Feliciana Sheriff's Dep't,* 228 F.3d 388, 393 (5th Cir.2000) ("Unlike convicted prisoners, whose rights to constitutional essentials like medical care and safety are guaranteed by the Eight[h] Amendment, pretrial detainees look to the procedural and substantive due process guarantees of the Fourteenth Amendment to ensure provision of these same basic needs."), *citing Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). A serious medical condition or need is equivalent to objective exposure to a substantial risk of harm; such a condition or need is "one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Carlucci v. Chapa*, 884 F.3d 534, 538-40 (5th Cir. 2018), *quoting Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006); *Cadena v. El Paso County*, 946 F.3d 727-28 (5th Cir. 2020). "Medical treatment that is merely unsuccessful or negligent does not constitute deliberate indifference, 'nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances.'"

*Arenas v. Calhoun*, 922 F.3d 616, 620 (5th Cir. 2019) (citations omitted) (analogous Eighth Amendment convicted prisoner context)[4].

The parties disagree about the standard to be applied to the plaintiffs' deliberate indifference claims, however the law is settled in the Fifth Circuit that the standard is one of subject deliberate indifference.[5] In *Estate of Bonilla by & through Bonilla v. Orange Cty., Texas*, 982 F.3d 298, 305 (5th Cir. 2020), the Fifth Circuit explained that to prove deliberate indifference, the plaintiff must show that the defendants were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," that the defendants actually "dr[e]w the inference," and that the defendants "disregard[ed] that risk by failing to take reasonable measures to abate it." *Hyatt v. Thomas*, 843 F.3d at 177 (5th Cir. 2016),

---

[4] The same legal standard governs the constitutional claims concerning medical care by pretrial detainees under the Due Process Clause and convicted inmates under the Eighth Amendment. *Baughman v. Garcia,* 254 F.Supp.3d 848, 868. (S.D.Tex. 2017).

[5] The plaintiffs argue that an objective deliberate indifference standard should be employed in light of the Supreme Court's decision in *Kingsley v. Hendrickson*, — U.S. —, 135 S.Ct. 2466, 192 L.Ed.2d 416 (2015), an excessive force case, however they acknowledge that the Fifth Circuit has declined to adopt such a standard in failure to protect cases. In *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 420 n.4 (5th Cir. 2017), decided after *Kingsley*, the Fifth Circuit noted that Judge Graves, in his concurring opinion, suggested that the court should reconsider *Hare en banc* in light of *Kingsley*. However, the panel declined to do so, noting that because the Fifth Circuit has continued to rely on *Hare* and to apply a subjective standard post-*Kingsley*, the panel was bound by the Circuit's rule of orderliness. *See Estate of Henson v. Wichita Cty.*, 795 F.3d 456 (5th Cir. 2015); *see also Hyatt v. Thomas*, 843 F.3d 172 (5th Cir. 2016); *Zimmerman v. Cutler*, 657 Fed.Appx. 340 (5th Cir. 2016). The panel also noted that the Ninth Circuit is the only circuit to have extended *Kingsley*'s objective standard to failure-to-protect claims. *See Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016). In light of the foregoing, this Court continues to apply the subjective deliberate indifference standard.

*quoting Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *see also Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

Thus, a plaintiff "must show that the officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *See Arenas* at 620-21 (citations omitted). To be sure, "[p]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer v. Brennan*, 511 U.S. 825, 844 (1994) (considering analogous Eighth Amendment context).

Plaintiffs allege that Hamilton, among others, violated the decedent's right not to be treated with deliberate indifference with respect to his serious medical needs. District courts within the Fifth Circuit have described the standard for proving deliberate indifference as "difficult . . . to meet. To show that a municipal employee acted with subjective deliberate indifference, [the plaintiff] must allege that "the official had subjective knowledge of a substantial risk of serious harm." *See, e.g., Watts v. Warren Cty., Mississippi*, 2019 WL 2492286, at *3 (S.D. Miss. June 14, 2019), *citing Olabisiomotosho v. City of Hous.*, 185 F.3d 521, 526 (5th Cir. 1999), *quoting Hare*, 74 F.3d at 650.

11

It is undisputed that Hamilton did not participate in the initial in-take process. She argues that the facts show that Walker presented to LPCC with no complaints of any issues; he intentionally misled the medical staff, including Samuel and LPSO deputies by claiming to have taken a prescribed sleeping pill shortly before arrest; and he objectively demonstrated evidence of having taken sleep medication by the fact that he was becoming drowsier. Hamilton contends that the facts alleged by plaintiffs and as established by documents reference by plaintiffs, show that Walker's blood pressure was normal upon intake. Although Walker presented with an elevated heart rate and was sweating, Hamilton asserts that such conditions could be explained by a recent arrest and the fact that it was summertime in Louisiana. Additionally, although Walker was drowsy and lethargic, he was able to answer questions appropriately and he was coherent. Additionally, he denied any medical issues outside of "stress." Walker was able to complete the medical assessment prior to being placed in the holding despite being drowsy and lethargic; he denied any suicidal ideations; and he falsely stated to Samuel that he does not abuse medications.

Hamilton argues that there were, therefore, no objective signs that Walker was at risk for overdose. Samuel's recommendation to place him in a holding cell to allow him to rest was reasonable, based upon the belief that Walker was drowsy due to the Klonopin. Thus, Hamilton's actions or inactions thereafter were also

reasonable. According to Hamilton, the facts alleged simply do not state a claim for deliberate indifference to Walker's serious medical needs. The Court agrees.

The undersigned is mindful of the high standard for stating a claim for deliberate indifference, which requires showing: (i) that each defendant had subjective knowledge of facts from which an inference of substantial risk of serious harm could be drawn, (ii) that each defendant actually drew that inference, and (iii) that each defendant's response to the risk indicated that the defendant subjectively intended that harm to occur." *Tamez v. Manthey*, 589 F.3d 764, 770 (5th Cir. 2009). As stated previously, deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm and is "an extremely high standard to meet." *Hare v. City of Corinth*, 74 F.3d 633, 645 (5th Cir. 1996) (*en banc*); *Domino v. Tex. Dept. of Criminal Justice*, 239 F.3d 752, 75 (5th Cir. 2001).

In this case, plaintiffs allege that Hamilton was advised that Walker had taken sleeping medication and would be asleep for most of the day. Walker was already in a holding cell sleeping at the time Hamilton came on shift. Even taking the plaintiffs' allegations as true – that Walker had normal blood pressure but was sweating, had an elevated heart rate, and was lethargic – it is undisputed that Hamilton did not personally observe Walker when he was processed into the jail. Plaintiffs' contentions are based solely on the allegations that Hamilton later became

13

aware of these "conditions" and failed to act or to take necessary steps to ensure Walker's safety.

Because the undersigned concludes that the plaintiffs have not specifically alleged facts showing that Hamilton had subjective personal knowledge that Walker had a serious medical need, and because the plaintiffs have not specifically alleged facts showing that Hamilton nevertheless ignored those medical needs, the 1983 claims against Hamilton for deliberate indifference to a serious medical need should be dismissed.

### 2. State law medical malpractice or intentional tort claim

In her motion to dismiss, Hamilton argues that the plaintiffs fail to "allege a state law medical malpractice claim" or claim for intentional tort against her, because she was not involved in the intake process for Walker, and because the medical information with which she was provided does not establish medical malpractice on her part.[6] Hamilton alternatively requests that, if this Court should find the plaintiffs state a claim of medical malpractice or intentional tort against her, this Court decline to exercise its supplemental jurisdiction over the plaintiffs' state law claims against her.

---

[6] Louisiana Revised Statute 40:1231.8(B)(1)(a)(i) provides that no action against a health care provider covered by the Medical Malpractice Act, or its insurer, may be commenced by any court before the claim has been presented to a medical review panel. The parties appear to agree that Hamilton is not a participating medical provider, and therefore, the plaintiffs were not required to obtain a medical review panel opinion prior to naming her in this lawsuit. *See* Hamilton's memorandum in support of motion to dismiss, Doc. 92-1, at n.28.

To be clear, no party sets forth the framework for sufficiently stating a claim for medical malpractice or intentional tort under Louisiana law in any brief, nor has any party briefed the standards or governing law for supplemental jurisdiction. Because the undersigned recommends that this Court decline to exercise its supplemental jurisdiction over the plaintiffs' state law claims, the undersigned will further address this issue.

If a court has original jurisdiction over a federal claim pursuant to 28 U.S.C. § 1331, the court also has supplemental jurisdiction over state law claims "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." *Briley v. Barreca*, 2021 WL 269767, at *3 (E.D. La. Jan. 27, 2021); 28 U.S.C. §1367(a). Upon dismissal of the federal claim that served as the basis for original jurisdiction, the district court retains its statutory supplemental jurisdiction over any related state law claims. *Briley*, 2021 WL 269767 at *3, *citing Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639–40 (2009).

The Court, however, may choose whether or not to exercise supplemental jurisdiction. *Id.* "A district court's decision whether to exercise [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." *See Carlsbad*, 556 U.S. at 639 ("The district courts *may* decline to exercise supplemental jurisdiction over a claim ... if ... the district court

15

has dismissed all claims over which it has original jurisdiction."). The "general rule" in the Fifth Circuit is to decline to exercise jurisdiction over supplemental state law claims when all federal claims are dismissed or otherwise eliminated from a case prior to trial -- but that rule "is neither mandatory nor absolute." *Briley*, 2021 WL 269767 at *3, *citing Batiste v. Island Records Inc.*, 179 F.3d 217, 227 (5th Cir. 1999) (citations omitted).

28 U.S.C. §1367(c) enumerates the circumstances in which district courts may refuse to exercise supplemental jurisdiction. Under that statute, the district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if –

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.[7]

The Court's decision to retain supplemental jurisdiction is guided by "both the statutory provisions of 28 U.S.C. § 1367(c) and the balance of the relevant factors of judicial economy, convenience, fairness, and comity." *Batiste*, 179 F.3d at 227;

---

[7] 28 U.S.C. § 1367.

*Parker & Parsley Petroleum Co. v. Dresser Ind.*, 972 F.2d 580, 585 (5th Cir. 1992). "No single factor" in the supplemental jurisdiction analysis is dispositive. *Parker*, 972 F.3d at 587. Courts must review all of the factors under the specific circumstances of a given case. *Id.*

In this case, the plaintiffs' state law claims do not raise novel or complex issues, however, the state law claims predominate at this stage of the litigation, because all federal claims against Hamilton are being dismissed. *See, e.g., Mendoza v. United States*, 481 F. Supp. 2d 643, 647 (W.D. Tex. 2006), *adhered to on reconsideration*, 481 F. Supp. 2d 650 (W.D. Tex. 2007), and *aff'd sub nom. Mendoza v. Murphy*, 532 F.3d 342 (5th Cir. 2008), and *aff'd sub nom. Mendoza v. Murphy*, 532 F.3d 342 (5th Cir. 2008) (where court dismissed the federal claims and only supplemental state law claims remain, the state law claims predominated over the federal claims, and this factor weighed in favor of declining to exercise supplemental jurisdiction). Similarly, the third factor weighs in favor of declining to exercise supplemental jurisdiction, as all claims that gave the federal court jurisdiction have been dismissed, and the only remaining claims against Hamilton are state law medical malpractice and intentional tort claims. *See Parker,* 972 F.2d at 585 ("Our general rule is to dismiss state claims when the federal claims to which they are pendent are dismissed."), *citing Wong v. Stripling,* 881 F.2d 200, 204 (5th Cir.1989).

The last statutory factor is whether there are compelling reasons to decline jurisdiction. §1367(c)(4). The claims against Hamilton are stand-alone claims in this matter, that is, unlike the majority of LPNs who have been sued in this matter, Hamilton is not employed by Advantage Professionals, LLC, but rather, is employed by a third party that contracted with LPSO to provide nursing services to the LPCC. Hamilton has separate counsel from the other LPNs in this case, and her claims could effectively be removed from this matter without impacting any of the remaining claims or defendants in the federal litigation.

In addition to the statutory factors, the undersigned considers "judicial economy, convenience, fairness, and comity." *Smith v. Amedisys Inc.,* 298 F.3d 434, 447 (5th Cir.2002). This case has been in federal court for almost two years. Although that period of time may seem substantial, one full year of that two-year time period occurred during the Covid-19 pandemic, when all civil cases on the Court's docket were continued several times, and little, if any, discovery progressed in cases because of lock-down orders. This case has gone through two rounds of motions to dismiss filings – the first on the plaintiffs' first supplemental complaint and the second on their second supplemental complaint -- because the plaintiffs were permitted to amend their pleadings. To date, the majority of the litigation has been spent refining pleadings and weeding out claims. No trial date has been set in this

case, and there is no Scheduling Order in place. Additionally, proceeding with state claims in a Louisiana court appears convenient and fair.

Thus, after considering the foregoing factors, the undersigned recommends that this Court decline to exercise its supplemental jurisdiction over the plaintiffs' state law claims of medical malpractice and intentional tort against Hamilton, and it is RECOMMNEDED that these claims be DENIED AND DISMISSED WITHOUT PREJUDICE.

**CONCLUSION**

Considering the foregoing,

**IT IS RECOMMENDED** that the Rule 12(b)(6) Motion to Dismiss filed by defendant Quinceyeta Hamilton ("Hamilton") [Doc.92] be GRANTED, as follows.

IT IS RECOMMENDED that the plaintiffs' Section 1983 claims against Hamilton for deliberate indifference to Walker's serious medical needs be GRANTED, and that these claims be DENIED AND DISMISSED WITH PREJUDICE.

IT IS FURTHER RECOMMENDED that the motion to dismiss plaintiffs' state law claims for medical malpractice and intentional tort against Hamilton be GRANTED, and that these claims be DENIED AND DISMISSED WITHOUT PREJUDICE, as this Court declines to exercise its supplemental jurisdiction over these claims.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

**THUS DONE AND SIGNED** this 20th day of April 2021 at Lafayette, Louisiana.

CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE