## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

CRYSTAL MCLEMORE, ET AL.      Civil Action No. 6:19-0751

versus      Judge Michael J Juneau

MARK GARBER, ET AL.      Magistrate Judge Carol B Whitehurst

## REPORT AND RECOMMENDATION

Before the undersigned, on referral from the district judge, is the Rule 12(b)(6) Motion to Dismiss filed by defendants Advantage Medical Professionals, LLC, Cynthia Wiltz, Shelly Samuel, Randell Bernard, Mona Bergaux, and Wilhelmina Clay ("the Advantage defendants") [Doc. 90]. The plaintiffs oppose the motion [Doc. 102], and the Advantage defendants filed a reply brief [Doc. 113]. For the following reasons, it is RECOMMENDED that the Motion to Dismiss be GRANTED.

## FACTUAL BACKGROUND

As the Court has set forth the entirety of the facts of this case in previous orders, the undersigned will limit the factual background to the claims against the Advantage defendants.

The instant lawsuit arises out of an incident occurring on June 15-16, 2018 at the Lafayette Parish Correctional Center ("LPCC"), where the decedent, Ronald

Walker, was allegedly found deceased as the result of a drug overdose. It appears to be undisputed that Ronald Walker, a pre-trial detainee, presented for intake at LPCC as having taken sleep medication just prior to his arrest. After completing an intake medical clearance by a nurse, Walker was placed in a holding cell. He died some hours later. All of the defendants have argued throughout this litigation that, unbeknownst to any officials at LPCC, Walker had ingested codeine (instead of sleep medication) prior to his arrest.

On June 13, 2019, the plaintiffs filed suit against Lafayette Parish Sheriff Mark Garber, as well as numerous Lafayette Parish Sheriff's Office ("LPSO") deputies and various medical professionals. In their Second Supplemental and Amended Complaint [Doc. 75], the plaintiffs allege -- in paragraphs 19, 21-41, and 43-56 -- that the Advantage defendants engaged in deliberate indifference to the serious medical needs of Walker by failing to properly assess his serious medical needs during the initial intake process of booking, and thereafter failing to properly monitor Walker before he died. The foregoing are the bases of the plaintiffs' Section 1983 claims against the Advantage defendants. The plaintiffs also allege that the Advantage implemented unconstitutional policies at the jail (*Monell* claims). Finally, the plaintiffs allege state law medical malpractice claims against the Advantage defendants.

2

According to plaintiffs' Second Supplemental and Amended Complaint, Shelly Samuel (the intake nurse on the night in question) identified and charted Walker's medical conditions, such as his use of prescription Klonopin, elevated heart rate, sweating, and lethargy and drowsiness, but failed to conduct a suicide screening, failed to refer Walker to the emergency room, and failed to order constant direct monitoring of him.  Plaintiffs contend that such inaction was deliberately indifferent to a serious medical need and constituted medical malpractice/negligence. With respect to the other Advantage nurses, the allegations stem from information that plaintiffs allege was reported to them by Samuel. Plaintiffs allege that these nurses, who came on shift after Samuel, failed to observe or monitor Walker, failed to refer Walker to a physician, and failed to perform a detox screen of Walker or to perform CIWA/COWS protocol to assess his condition, despite their knowledge that he was suffering from a serious medical condition.

In the instant motion, the Advantage defendants argue the plaintiffs fail to state a §1983 claim against them because the facts plaintiffs allege do not support their claim that the Advantage defendants acted with deliberate indifference to Walker's alleged medical needs, that they were responsible for implementing unconstitutional policies and procedures at the jail, or that they committed medical malpractice under the circumstances.

# LAW AND ANALYSIS

## A. Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, the plaintiffs must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232–33 (5th Cir.2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir.1996). But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 129 S.Ct. at 1949–50.

A legally sufficient complaint must establish more than a "sheer possibility" that plaintiffs' claim is true. *Id.* It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Twombly*, 550 U.S. at 555. In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiffs' claim. *Lormand*, 565 F.3d at 255–57. If there are insufficient factual allegations to raise a right to

relief above the speculative level, *Twombly*, 550 U.S. at 555, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Carbe v. Lappin*, 492 F.3d 325, 328 & n. 9 (5th Cir.2007), the claim must be dismissed.

In considering a motion to dismiss for failure to state a claim, a district court must limit itself to the contents of the pleadings, including attachments thereto. Fed.R.Civ.P. 12(b)(6). The Fifth Circuit allows courts to consider "[d]ocuments that a defendant attaches to a motion to dismiss [to be] considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000), citing *Venture Assocs. Corp. v. Zenith Data Sys. Corp.,* 987 F.2d 429, 431 (7th Cir.1993).

In their opposition brief, the plaintiffs object to the Court's consideration of the documents attached to the pending motion which were filed at Rec. Doc. 90-2, 90-3, 90-4, 90-5, 90-6, and 90-7. These documents include the Opinion of the Medical Review Panel which reviewed identical claims against Dr. Voitier, Advantage, Samuel, Bernard, Bergaux, Clay, and Wiltz, the affidavit of arrest, the Lafayette Parish Correctional Center Initial Acceptance Form ("IAF"), the Coroner's Report, the Lafayette Parish Behavioral Sheet Documentation, and the Nurse Protocol form which was prepared by Samuel on June 16, 2016. Plaintiffs argue that these documents are unreliable because they have not been authenticated.

5

Plaintiffs acknowledge, however, that they rely on the IAF and the Nurse Protocol in the Second Supplemental and Amended Complaint.[1]

Review of the Second Supplemental and Amended Complaint shows that the plaintiffs refer to the IAF, the Nurse Protocol form and the Behavioral Sheet Documentation throughout the complaint in alleging their claims. Courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, and in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice. *See, e.g., Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322, 127 S. Ct. 2499, 2509, 168 L. Ed. 2d 179 (2007). *Accord Funk v. Stryker Corp.*, 631 F.3d 777 (5th Cir. 2011).

Because the plaintiffs relied upon the IAF, the Nurse Protocol, and the Behavioral Sheet Documentation in their Second Supplemental and Amended Complaint, the undersigned has considered them in making the recommendations made herein.[2]

---

[1] Plaintiffs argue that these documents cannot be considered in ruling on the pending motion to dismiss, and that before the documents can be considered, the motion would need to be converted to a motion for summary judgment, to which they object. *See Thompson v. Ackal*, WDLA # 15–02288 (March 9, 2016), 2016 WL 1394352 at *3 (refusing to consider unauthenticated documents attached to defendants' motion to dismiss); *Ace American Ins. Co. v. Huntsman Corp.*, 255 F.R.D. 179, 188-90 (S.D. Tex. 2008) (refusing to consider documents attached to defendants' motion to dismiss).

[2] Although it appears that plaintiffs also relied on information contained in some of the other LSPO documents which are attached as exhibits to the Advantage Defendants' motion, the Court finds those documents unnecessary to the resolution of this motion and, as such, has not considered them.

6

**B. Analysis**

**1.  1983 claim for deliberate indifference to serious medical need**

Pretrial detainees have a constitutional right not to have confining officials treat their serious medical needs with deliberate indifference, under the Due Process Clause of the Fourteenth Amendment.  *Estate of Allison v. Wansley*, 524 F. App'x 963, 970 (5th Cir. 2013), *citing Jacobs v. W. Feliciana Sheriff's Dep't,* 228 F.3d 388, 393 (5th Cir. 2000) ("Unlike convicted prisoners, whose rights to constitutional essentials like medical care and safety are guaranteed by the Eight[h] Amendment, pretrial detainees look to the procedural and substantive due process guarantees of the Fourteenth Amendment to ensure provision of these same basic needs."), *citing Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). A serious medical condition or need is equivalent to objective exposure to a substantial risk of harm; such a condition or need is "one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Carlucci v. Chapa*, 884 F.3d 534, 538-40 (5th Cir. 2018), *quoting Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006); *Cadena v. El Paso County*, 946 F.3d 727-28 (5th Cir. 2020).  "Medical treatment that is merely unsuccessful or negligent does not constitute deliberate indifference, 'nor does a prisoner's

disagreement with his medical treatment, absent exceptional circumstances.'" *Arenas v. Calhoun*, 922 F.3d 616, 620 (5ᵗʰ Cir. 2019) (citations omitted) (analogous Eighth Amendment convicted prisoner context).[3]

The parties disagree about the standard to be applied to the plaintiffs' deliberate indifference claims. In the Fifth Circuit, however, the law is settled that the standard is one of subject deliberate indifference.[4] In *Estate of Bonilla by & through Bonilla v. Orange Cty., Texas*, 982 F.3d 298, 305 (5th Cir. 2020), the Fifth Circuit explained that to prove deliberate indifference, the plaintiff must show that the defendants were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," that the defendants actually "dr[e]w the inference," and that the defendants "disregard[ed] that risk by failing to take

---

[3] The same legal standard governs the constitutional claims concerning medical care by pretrial detainees under the Due Process Clause and convicted inmates under the Eighth Amendment. Baughman v. Garcia, 254 F.Supp.3d 848, 868. (S.D.Tex. 2017).

[4] The plaintiffs argue that an objective deliberate indifference standard should be employed in light of the Supreme Court's decision in *Kingsley v. Hendrickson*, — U.S. —, 135 S.Ct. 2466, 192 L.Ed.2d 416 (2015), an excessive force case, however they acknowledge that the Fifth Circuit has declined to adopt such a standard in failure to protect cases. In *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 420 n.4 (5th Cir. 2017), decided after *Kingsley*, the Fifth Circuit noted that Judge Graves, in his concurring opinion, suggested that the court should reconsider *Hare en banc* in light of *Kingsley*. However, the panel declined to do so, noting that because the Fifth Circuit has continued to rely on *Hare* and to apply a subjective standard post-*Kingsley*, the panel was bound by the Circuit's rule of orderliness. *See Estate of Henson v. Wichita Cty.*, 795 F.3d 456 (5th Cir. 2015); *see also Hyatt v. Thomas*, 843 F.3d 172 (5th Cir. 2016); *Zimmerman v. Cutler*, 657 Fed.Appx. 340 (5th Cir. 2016). The panel also noted that the Ninth Circuit is the only circuit to have extended *Kingsley*'s objective standard to failure-to-protect claims. *See Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016). In light of the foregoing, this Court continues to apply the subjective deliberate indifference standard.

reasonable measures to abate it." *Hyatt v. Thomas*, 843 F.3d at 177 (5th Cir. 2016), *quoting Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *see also Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

Thus, a plaintiff "must show that the officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *See Arenas,* at 620-21 (citations omitted). To be sure, "[p]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer v. Brennan*, 511 U.S. 825, 844 (1994) (considering analogous Eighth Amendment context).

Additionally, deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm and is "an extremely high standard to meet." *See Hare v. City of Corinth*, 74 F.3d 633, 645 (5th Cir. 1996) (*en banc*) and *Domino v. Tex. Dept. of Criminal Justice*, 239 F.3d 752, 75 (5th Cir. 2001). To show that a municipal employee acted with subjective deliberate indifference, [the plaintiff] must allege that "the official had subjective knowledge of a substantial risk of serious harm." *See, e.g., Watts v. Warren Cty., Mississippi*, 2019 WL 2492286, at *3 (S.D. Miss. June 14, 2019), *citing*

*Olabisiomotosho v. City of Hous.*, 185 F.3d 521, 526 (5th Cir. 1999), *quoting Hare*, 74 F.3d at 650.

Plaintiffs allege that the Advantage defendants violated the decedent's right not to be treated with deliberate indifference with respect to his serious medical needs. Plaintiffs assert that the Advantage Defendants, especially Samuel, were aware of Walker's alleged Klonopin abuse and his unconsciousness. They allege that Samuel observed Walker "nod out" while being questioned during a twelve (12) minute interval which occurred between 1958 and 2010 hrs. (Rec. Doc. 75, ¶¶ 19, 27-29). They further allege that Walker told Samuel he took Klonopin at 6:45 p.m., and that Samuel saw Walker sleeping in a standup cell, snoring loudly, approximately fifty minutes later. (Rec. Doc. 75 ¶¶ 26-27). Plaintiffs further allege that Samuel was later told by Lt. Segura that Walker was asleep in a regular holding cell. (Rec. Doc. 75, ¶¶ 27 and 39). According to plaintiffs, Walker clearly displayed signs of drug abuse, i.e., sweating and tachycardia, but Samuel refused to monitor Walker after he was placed in a stand-up cell, and later a holding cell, where he remained unconscious. (Rec. Doc. 75, ¶¶ 27-29). The plaintiffs assert that all of the other Advantage defendants were advised of Walker's Klonopin use, tachycardia, lethargy and loss of consciousness as reported in the IAF but did nothing in response. (Rec. Doc. 75, ¶ 43).

The Advantage defendants argue that only objective signs exhibited by Walker during the intake process were: (1) lethargy, a finding consistent with his statement that he had taken Klonopin as a sleep aid just prior to his arrest; (2) sweating at the top of his head, a finding consistent with the fact that Walker was morbidly obese, he was under arrest, and it was June in Louisiana; and, (3) an elevated heart rate, a finding consistent with the circumstances presented, i.e., Walker's arrest and immediate incarceration.  The Advantage defendants argue Walker's blood pressure was within normal limits, he was answering questions appropriately, and he specifically denied any shortness of breath, dizziness, sudden weakness, fluttering or palpitations in his chest, lightheadedness, or fainting.  He further denied experiencing any pain.

In short, the Advantage defendants argue that the evidence establishes that they had no subjective knowledge of any facts from which they could draw an inference that there was a substantial risk of serious harm to Walker.  They argue that the sole reason for the lack of subjective knowledge on the part of Samuel and the other health care provider defendants was simply because Walker, himself, repeatedly and deliberately withheld any such information from them and from the prison officials who were in contact with him.

The Court agrees with the defendants. Even assuming the facts alleged by the plaintiffs are true, as the Court must, the undersigned concludes that the objective

11

signs presented by Walker at his intake screening did not give the Advantage defendants subjective knowledge of a serious medical need. The only nurse alleged to have personally observed Walker was Samuel. While the plaintiffs argue that Walker displayed signs of "drug abuse" during his initial intake screening, Walker, in fact, denied having taken drugs other than his prescribed sleep medication. The fact that Walker was sweating is consistent with Walker's obesity and the fact that it was June in Louisiana, and the fact that Walker had just been arrested and transported to jail. Walker's blood pressure was normal, and his lethargy is consistent with someone who had taken sleeping medication prior to being brought to jail. Walker denied any other physical or medical problems, other than "stress." Thus, based upon the information provided by Walker himself, and Samuel's own personal observations of Walker, the undersigned finds that the facts do not support a Section 1983 claim against Samuel for deliberate indifference, because Samuel did not have subjective knowledge that Walker presented a serious medical need.

As for the remaining individual Advantage medical defendants, none of these defendants personally observed Walker's physical condition at the time of the initial intake screening. At the time the other nurses came on shift, Walker was already in a holding cell sleeping. Even taking the plaintiffs' allegations as true – that Walker had normal blood pressure but was sweating and had an elevated heart rate and was lethargic – it is undisputed that Wiltz, Bernard, Bergaux, and Clay did not personally

observe Walker when he was processed into the jail.  Plaintiffs' contentions are based solely on the allegations that these defendants later became aware of these "conditions" and failed to act or take necessary steps to ensure Walker's safety. Based on these alleged facts, the plaintiffs have not stated a claim for deliberate indifference, because the facts do not establish that these defendants had subjective knowledge of a serious medical need.

The undersigned is mindful of the high standard for stating a claim for deliberate indifference, which requires showing: (i) that each defendant had subjective knowledge of facts from which an inference of substantial risk of serious harm could be drawn, (ii) that each defendant actually drew that inference, and (iii) that each defendant's response to the risk indicated that the defendant subjectively intended that harm to occur." *Tamez v. Manthey*, 589 F.3d 764, 770 (5th Cir. 2009). The deliberate indifference standard requires the court to separate omissions that "amount to an intentional choice" from those that are merely "unintentionally negligent oversights." *Southard v. Tex. Bd. Of Crim Justice*, 115 F.3d 539, 551 (5th Cir. 1997).  As stated previously, deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm and is "an extremely high standard to meet."  *Hare v. City of Corinth*, 74 F.3d 633, 645 (5th Cir. 1996) (*en banc*); *Domino v. Tex. Dept. of Criminal Justice*, 239 F.3d 752, 75 (5th Cir. 2001).

Because the undersigned concludes that the plaintiffs have not specifically alleged facts showing that the Advantage defendants had subjective personal knowledge that Walker had a serious medical need, and because the plaintiffs have not specifically alleged facts that the Advantage defendants nevertheless ignored those medical needs, the 1983 claims against the Advantage defendants for deliberate indifference to a serious medical need should be dismissed.

> **2. Deliberate indifference of Advantage for unconstitutional policies related to (a) suicide assessment and prevention, (b) lack of protocols to identify evidence of extreme intoxication or drug abuse, (c) inadequate staffing, (d) monitoring, and (e) training (*Monell* claims)**

The plaintiffs allege that Advantage had no suicide prevention program and, consequently, failed to train LPNs to identify at-risk inmates such as Walker. The plaintiffs allege that a suicide prevention program would have trained LPNs to identify Walker as a suicide risk and would have resulted in his immediate referral to a provider for treatment and/or monitoring. The plaintiffs further allege that Advantage had no policies on protocols for LPN's to follow to identify extreme intoxication or drug abuse; failed to staff the jail with qualified health care providers with the expertise necessary to identify drug overdoses, or the expertise necessary to recognize the need for direct observation and/or immediate referral of intoxicated inmates to an emergency room; and failed to train LPNs to identify inmates at risk

for suicide, monitor inmates, report at risk inmates to medical professionals, or refer at risk inmates to the Emergency Room.

Plaintiffs make only conclusory statements regarding any alleged responsibility that Advantage had concerning the policies and practices of LPCC with no factual support for any claim that Advantage failed to train its employees. Additionally, it is well-settled that a *Monell* claim falls where there is no underlying violation. *City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986); *Cardenas v. San Antonio Police Dept.*, 417 F.Appx. 401, 402 (5 Cir. 2011) (recognizing that "because the individual defendants did not inflict any constitutional harm on plaintiff, the district court properly granted summary judgment for the city). Because the undersigned recommends the dismissal of all underlying claims against Advantage and its nurses, any *Monell* claims against Advantage for its failure to enact policies and/or failure to train or supervise its nurses must be dismissed.

### 3. State law medical malpractice and intentional tort claims

In their motion to dismiss, the Advantage defendants argue that the plaintiffs fail to state a medical malpractice claim against them. The Advantage defendants alternatively request that, if this Court should find the plaintiffs state a claim of medical malpractice, this Court decline to exercise its supplemental jurisdiction over the plaintiffs' state law claims against her.

To be clear, no party sets forth the framework for sufficiently stating a claim for medical malpractice or intentional tort under Louisiana law in any brief, nor has any party briefed the standards or governing law for supplemental jurisdiction. Because the undersigned recommends that this Court decline to exercise its supplemental jurisdiction over the plaintiffs' state law claims, the undersigned will further address this issue.

If a court has original jurisdiction over a federal claim pursuant to 28 U.S.C. § 1331, the court also has supplemental jurisdiction over state law claims "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." *Briley v. Barreca*, 2021 WL 269767, at *3 (E.D. La. Jan. 27, 2021); 28 U.S.C. §1367(a). Upon dismissal of the federal claim that served as the basis for original jurisdiction, the district court retains its statutory supplemental jurisdiction over any related state law claims. *Briley*, 2021 WL 269767 at *3, *citing Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639–40 (2009).

The Court, however, may choose whether to exercise supplemental jurisdiction. *Id.* "A district court's decision whether to exercise [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." *See Carlsbad*, 556 U.S. at 639 ("The district courts *may* decline to exercise supplemental jurisdiction over a claim ... if ... the district court

16

has dismissed all claims over which it has original jurisdiction.").  The "general rule" in the Fifth Circuit is to decline to exercise jurisdiction over supplemental state law claims when all federal claims are dismissed or otherwise eliminated from a case prior to trial -- but that rule "is neither mandatory nor absolute." *Briley*, 2021 WL 269767 at *3, *citing Batiste v. Island Records Inc.*, 179 F.3d 217, 227 (5th Cir. 1999) (citations omitted).

28 U.S.C. §1367(c) enumerates the circumstances in which district courts may refuse to exercise supplemental jurisdiction.  Under that statute, the district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if –

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.[5]

The Court's decision to retain supplemental jurisdiction is guided by "both the statutory provisions of 28 U.S.C. § 1367(c) and the balance of the relevant factors

---

[5] 28 U.S.C. § 1367.

17

of judicial economy, convenience, fairness, and comity." *Batiste*, 179 F.3d at 227; *Parker & Parsley Petroleum Co. v. Dresser Ind.*, 972 F.2d 580, 585 (5th Cir. 1992). "No single factor" in the supplemental jurisdiction analysis is dispositive. *Parker*, 972 F.3d at 587. Courts must review all of the factors under the specific circumstances of a given case. *Id.*

In this case, the plaintiffs' state law claims do not raise novel or complex issues, however, the state law claims predominate at this stage of the litigation, because all federal claims against the Advantage defendants are being dismissed. *See, e.g., Mendoza v. United States*, 481 F. Supp. 2d 643, 647 (W.D. Tex. 2006), *adhered to on reconsideration*, 481 F. Supp. 2d 650 (W.D. Tex. 2007), and *aff'd sub nom. Mendoza v. Murphy*, 532 F.3d 342 (5th Cir. 2008), and *aff'd sub nom. Mendoza v. Murphy*, 532 F.3d 342 (5th Cir. 2008) (where court dismissed the federal claims and only supplemental state law claims remain, the state law claims predominated over the federal claims, and this factor weighed in favor of declining to exercise supplemental jurisdiction). Similarly, the third factor weighs in favor of remand, as all claims that gave the federal court jurisdiction have been dismissed, and the only remaining claims against the Advantage defendants are for state law medical malpractice and intention tort. *See Parker,* 972 F.2d at 585 ("Our general rule is to dismiss state claims when the federal claims to which they are pendent are dismissed."), *citing Wong v. Stripling,* 881 F.2d 200, 204 (5th Cir.1989).

18

In addition to the statutory factors, the undersigned considers "judicial economy, convenience, fairness, and comity." *Smith v. Amedisys Inc.,* 298 F.3d 434, 447 (5th Cir.2002).  This case has been in federal court for almost two years. Although that period of time may seem substantial, one full year of that two-year time period occurred during the Covid-19 pandemic, when all civil cases on the Court's docket were continued several times, and little, if any, discovery progressed in cases because of lock-down orders.  This case has gone through two rounds of motions to dismiss filings – the first on the plaintiffs' first supplemental complaint and the second on their second supplemental complaint -- because the plaintiffs were permitted to amend their pleadings.  As such, to date, the majority of the litigation has been spent refining pleadings and weeding out claims.  No trial date has been set in this case, and there is no Scheduling Order in place.  Additionally, proceeding with state claims in a Louisiana court appears convenient and fair.

Thus, after considering the foregoing factors, the undersigned recommends that this Court decline to exercise its supplemental jurisdiction over the plaintiffs' state law claims against the Advantage defendants, and it is RECOMMENDED that these claims be DENIED AND DISMISSED WITHOUT PREJUDICE.

19

## CONCLUSION

Considering the foregoing,

**IT IS RECOMMENDED** that the Rule 12(b)(6) Motion to Dismiss filed by defendants Advantage Medical Professionals, LLC, Cynthia Wiltz, Shelly Samuel, Randell Bernard, Mona Bergaux, and Wilhelmina Clay [Doc. 90] be GRANTED, as follows.

IT IS RECOMMENDED that the motion to dismiss plaintiffs' Section 1983 claims against the Advantage defendants for deliberate indifference to Walker's serious medical needs be GRANTED, and that these claims be DENIED AND DISMISSED WITH PREJUDICE.

IT IS FURTHER REOCMMENDED that the motion to dismiss plaintiffs' *Monell* claims against the Advantage for unconstitutional policies related to (a) suicide assessment and prevention, (b) lack of protocols to identify evidence of extreme intoxication or drug abuse, (c) inadequate staffing, (d) monitoring, and (e) training (*Monell* claims) be GRANTED, and that these claims be DENIED AND DISMISSED WITH PREJUDICE.

IT IS FURTHER RECOMMENDED that the motion to dismiss plaintiffs' state law claims for medical malpractice tort against the Advantage defendants be GRANTED, and that these claims be DENIED AND DISMISSED WITHOUT

PREJUDICE, as this Court declines to exercise its supplemental jurisdiction over these claims.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

**THUS DONE AND SIGNED** at Lafayette, Louisiana on May 13, 2021.

CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE