UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

CRYSTAL MCLEMORE, ET AL.                    Civil Action No. 6:19-0751

versus                                       Judge Michael J Juneau

MARK GARBER, ET AL.                          Magistrate Judge Carol B Whitehurst

## REPORT AND RECOMMENDATION

Before the undersigned, on referral from the district judge, is the Motion to Dismiss Second Amended Complaint [Doc. 87] filed by Mark Garber. The plaintiffs oppose the motion [Doc. 104], and Garber filed a reply brief [Doc. 115]. For the following reasons, it is RECOMMENDED that the Motion to Dismiss be GRANTED.

## FACTUAL AND PROCEDURAL BACKGROUND

As the Court has set forth the entirety of the facts of this case in previous rulings and reports and recommendations, the undersigned will limit the factual background to the claims against Garber. The Court also seeks to clarify the record with respect to the claims originally pled against defendants Lt. Shawn Segura, Lt. Joseph Miller, Sgt. Samantha White, Deputy Justin Broussard, Deputy Ashley Prejean, Deputy Christopher Kent, Deputy Ebony Touchet, Deputy Kristy Thibodeaux, Deputy Giles Reed, and LPN Ian Duplantis.

1

The instant lawsuit arises out of an incident occurring on June 15-16, 2018 at the Lafayette Parish Correctional Center ("LPCC"), where the decedent, Ronald Walker, was allegedly found deceased as the result of a drug overdose. It appears to be undisputed that Ronald Walker, a pre-trial detainee, presented for intake at LPCC as having taken sleep medication just prior to his arrest. After completing an intake medical clearance by a nurse, Walker was placed in a holding cell. He died some hours later. All of the defendants have argued throughout this litigation that, unbeknownst to any officials at LPCC, Walker had ingested codeine (instead of sleep medication) prior to his arrest.

On June 13, 2019, the plaintiffs filed suit against Lafayette Parish Sheriff Mark Garber, as well as numerous Lafayette Parish Sheriff's Office ("LPSO") deputies and various medical professionals. As evidenced by the Second Supplemental an Amended Complaint [Doc. 75], the plaintiffs' allegations against Garber are couched in terms of Garber's supervisory liability for the alleged actions and/or inactions of his employees. It is undisputed that Garber was not present at the jail on the night Mr. Walker was admitted to the jail, and that he had no interaction with Mr. Walker at all.

In their Original and First Amended Complaints [Docs. 1 & 3], plaintiffs alleged that Lt. Segura, Lt. Miller, and Sgt. White were employed by LPSO in supervisory capacities and were responsible for communicating the serious medical

conditions of Mr. Walker. Plaintiffs also alleged that Segura, Miller and White, as supervisors, were responsible for supervising deputies on their shifts to ensure that all LPCC policies and procedures were carried out with respect to detainees with serious medical needs. Plaintiffs alleged that Deputies Broussard, Prejean, Kent, Touchet, Thibodeaux, and Reed were also employed by LPSO and were assigned to posts at LPCC in locations where Mr. Walker was housed and died. Plaintiffs alleged that these deputies violated their duties to communicate Mr. Walker's serious medical needs to their superiors while Walker was a detainee at LPCC. Plaintiffs further alleged that LPN Duplantis was also employed by LPSO as a health care provider and/or supervisor of other medical defendants. Plaintiffs alleged that LPN Duplantis failed to investigate Mr. Walker's condition during his shift and failed to order immediate transfer of Mr. Walker to a hospital.

Defendants Garber, Segura, Miller, White, Broussard, Prejean, Kent, Touchet, Thibodeaux, Reed and Duplantis filed a motion to dismiss the plaintiffs' Complaint and First Amended Complaint on October 28, 2019 [Doc. 52]. After the undersigned filed her Report and Recommendation on that motion [Doc. 68], but before the district judge had had a chance to fully consider it, the plaintiffs filed a Second Supplemental and Amended Complaint on November 4, 2020 [Doc. 75], in which plaintiffs appeared to have abandoned their claims against Segura, Miller, White, Broussard, Prejean, Kent, Touchet, Thibodeaux, Reed and Duplantis – that is, these

3

individuals were no longer listed as defendants in the Second Amended Complaint.[1] In light thereof, the district judge denied the Motion to Dismiss as moot [Doc. 78], specifically referencing in his Order the defendants who remained in the lawsuit. The undersigned thereafter vacated her Report and Recommendation in connection with that Motion to Dismiss. Because of the foregoing procedural posture, defendants Segura, Miller, White, Broussard, Prejean, Kent, Touchet Thibodeaux, Reed, and Duplantis continue to appear on the docket sheet as parties to the lawsuit when, in fact, the plaintiffs have abandoned their claims against them. For this reason, the undersigned recommends that the claims against Segura, Miller, White, Broussard, Prejean, Kent, Touchet, Thibodeaux, Reed and Duplantis be DENIED AND DISMISSED WITH PREJUDICE. That leaves Mr. Garber as the sole remaining defendant in the lawsuit. The instant Report addresses the claims against him.

## LAW AND ANALYSIS

### A. Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, the plaintiffs must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547

---

[1] Plaintiffs' Opposition to LPSO Defendants' Objection to Magistrate's Report and Recommendation [Doc. 60] clarifies that, in filing the Second Amended Complaint, it was Plaintiffs' intent to dismiss all claims against these defendants.

(2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232–33 (5th Cir.2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir.1996). But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 129 S.Ct. at 1949–50.

A legally sufficient complaint must establish more than a "sheer possibility" that plaintiffs' claim is true. *Id*. It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Twombly*, 550 U.S. at 555. In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiffs' claim. *Lormand*, 565 F.3d at 255–57. If there are insufficient factual allegations to raise a right to relief above the speculative level, *Twombly*, 550 U.S. at 555, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Carbe v. Lappin*, 492 F.3d 325, 328 & n. 9 (5th Cir.2007), the claim must be dismissed.

## B. Analysis

### 1. 1983 claim for deliberate indifference to serious medical need

Pretrial detainees have a constitutional right not to have confining officials treat their serious medical needs with deliberate indifference, under the Due Process Clause of the Fourteenth Amendment. *Estate of Allison v. Wansley*, 524 F. App'x 963, 970 (5th Cir. 2013), *citing Jacobs v. W. Feliciana Sheriff's Dep't,* 228 F.3d 388, 393 (5th Cir.2000) ("Unlike convicted prisoners, whose rights to constitutional essentials like medical care and safety are guaranteed by the Eight[h] Amendment, pretrial detainees look to the procedural and substantive due process guarantees of the Fourteenth Amendment to ensure provision of these same basic needs."), *citing Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). A serious medical condition or need is equivalent to objective exposure to a substantial risk of harm; such a condition or need is "one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Carlucci v. Chapa*, 884 F.3d 534, 538-40 (5th Cir. 2018), *quoting Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006); *Cadena v. El Paso County*, 946 F.3d 727-28 (5th Cir. 2020). "Medical treatment that is merely unsuccessful or negligent does not constitute deliberate indifference, 'nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances.'"

*Arenas v. Calhoun*, 922 F.3d 616, 620 (5th Cir. 2019) (citations omitted) (analogous Eighth Amendment convicted prisoner context).[2]

The parties disagree about the standard to be applied to the plaintiffs' deliberate indifference claims. However, the law is settled in the Fifth Circuit that the standard is one of subject deliberate indifference.[3] In *Estate of Bonilla by & through Bonilla v. Orange Cty., Texas*, 982 F.3d 298, 305 (5th Cir. 2020), the Fifth Circuit explained that to prove deliberate indifference, the plaintiff must show that the defendants were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," that the defendants actually "dr[e]w the inference," and that the defendants "disregard[ed] that risk by failing to take reasonable measures to abate it." *Hyatt v. Thomas*, 843 F.3d at 177 (5th Cir. 2016),

---

[2] The same legal standard governs the constitutional claims concerning medical care by pretrial detainees under the Due Process Clause and convicted inmates under the Eighth Amendment. Baughman v. Garcia, 254 F.Supp.3d 848, 868. (S.D.Tex. 2017).

[3] The plaintiffs argue that an objective deliberate indifference standard should be employed in light of the Supreme Court's decision in *Kingsley v. Hendrickson*, — U.S. —, 135 S.Ct. 2466, 192 L.Ed.2d 416 (2015), an excessive force case, however they acknowledge that the Fifth Circuit has declined to adopt such a standard in failure to protect cases. In *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 420 n.4 (5th Cir. 2017), decided after *Kingsley*, the Fifth Circuit noted that Judge Graves, in his concurring opinion, suggested that the court should reconsider *Hare en banc* in light of *Kingsley*. However, the panel declined to do so, noting that because the Fifth Circuit has continued to rely on *Hare* and to apply a subjective standard post-*Kingsley*, the panel was bound by the Circuit's rule of orderliness. *See Estate of Henson v. Wichita Cty.*, 795 F.3d 456 (5th Cir. 2015); *see also Hyatt v. Thomas*, 843 F.3d 172 (5th Cir. 2016); *Zimmerman v. Cutler*, 657 Fed.Appx. 340 (5th Cir. 2016). The panel also noted that the Ninth Circuit is the only circuit to have extended *Kingsley*'s objective standard to failure-to-protect claims. *See Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016). In light of the foregoing, this Court continues to apply the subjective deliberate indifference standard.

*quoting Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *see also Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

Thus, a plaintiff "must show that the officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *See id.* at 620-21 (citations omitted). To be sure, "[p]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer v. Brennan*, 511 U.S. 825, 844 (1994) (considering analogous Eighth Amendment context).

Additionally, deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm and is "an extremely high standard to meet." *See Hare v. City of Corinth*, 74 F.3d 633, 645 (5th Cir. 1996) (en banc) and *Domino v. Tex. Dept. of Criminal Justice*, 239 F.3d 752, 75 (5th Cir. 2001). To show that a municipal employee acted with subjective deliberate indifference, [the plaintiff] must allege that "the official had subjective knowledge of a substantial risk of serious harm*." See, e.g., Watts v. Warren Cty., Mississippi*, 2019 WL 2492286, at *3 (S.D. Miss. June 14, 2019), *citing Olabisiomotosho v. City of Hous.*, 185 F.3d 521, 526 (5th Cir. 1999), *quoting Hare*, 74 F.3d at 650.

Plaintiffs allege that Sheriff Garber is liable, in his official capacity, as the Sheriff of Lafayette Parish, for violating Walker's right to adequate medical care by enacting policies and establishing and maintaining jail conditions that he knew would result in a lack of appropriate supervision of pre-trial detainees. Plaintiffs also allege a claim against Garber in his individual capacity for filing to train/supervise the personnel at LPCC.

As an initial matter, to assert a claim against Garber in his individual capacity, the plaintiffs must "establish that the defendant[] [was] either personally involved in a constitutional deprivation or that [his] wrongful actions were causally connected to the constitutional deprivation." *James v. Texas Collin County*, 535 F.3d 365, 373 (5th Cir. 2008). "Supervisory officials may be held [individually] liable only if: (i) they affirmatively participate in acts that cause [a] constitutional deprivation; or (ii) implement unconstitutional policies that causally result in plaintiff's injury." *Belcher v. Lopinto*, 492 F. Supp. 3d 636, 658 (E.D. La. 2020), *citing Mouille v. City of Live Oak*, 977 F.2d 924, 929 (5th Cir. 1992); *see also Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987) (per curiam).

The plaintiffs present this Court with no evidence -- and make no allegations -- of the individual involvement or participation of Garber in the events surrounding Mr. Walker's death. As a result, the plaintiffs' claims against Garber in his individual capacity must fail.

With respect to the plaintiffs' claim for *Monell* or supervisory liability, plaintiffs are in effect arguing that Garber is responsible for the deliberate indifference of his employees. It is well-settled, however, that a *Monell* claim falls where there is no underlying violation. *City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986); *Cardenas v. San Antonio Police Dept.*, 417 F.Appx. 401, 402 (5th Cir. 2011) (recognizing that "because the individual defendants did not inflict any constitutional harm on plaintiff, the district court properly granted summary judgment for the city).

In separate Reports [Docs. 118, 120 & 123], the undersigned recommended the dismissal of all underlying claims against all remaining defendants in this lawsuit. In those Reports, the undersigned set forth in detail the rationale for the recommended dismissal of all Section 1983 claims for deliberate indifference and state law claims for medical malpractice and intentional tort alleged against all defendants in this case. Plaintiffs did not object to the findings and recommendations contained in any of those Reports and Judge Juneau issued Judgments adopting all of the Reports and Recommendation addressing these issues [Docs. 121, 120 & 124]. Accordingly, the rationale set forth in those Reports is adopted herein. Because this Court has dismissed all claims against all underlying defendants, including the medical defendants and the jail personnel involved in this matter, the plaintiffs cannot successfully bring a claim against Garber for

10

supervisory liability or for allegations of inadequate policies or procedures under *Monell*. For these reasons, the plaintiffs fail to state a claim for the foregoing.

### 2. State law claims

To the extent that the plaintiffs allege state law claims against Garber, this Court declines to exercise its supplemental jurisdiction over the plaintiffs' state law claims. Because the undersigned recommends that this Court decline to exercise its supplemental jurisdiction over the plaintiffs' state law claims, the undersigned will further address this issue.

If a court has original jurisdiction over a federal claim pursuant to 28 U.S.C. § 1331, the court also has supplemental jurisdiction over state law claims "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." *Briley v. Barreca*, 2021 WL 269767, at *3 (E.D. La. Jan. 27, 2021); 28 U.S.C. §1367(a). Upon dismissal of the federal claim that served as the basis for original jurisdiction, the district court retains its statutory supplemental jurisdiction over any related state law claims. *Briley*, 2021 WL 269767 at *3, *citing Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639–40 (2009).

The Court, however, may choose whether or not to exercise supplemental jurisdiction. *Id.* "A district court's decision whether to exercise [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is

purely discretionary." *See Carlsbad*, 556 U.S. at 639 ("The district courts *may* decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction."). The "general rule" in the Fifth Circuit is to decline to exercise jurisdiction over supplemental state law claims when all federal claims are dismissed or otherwise eliminated from a case prior to trial -- but that rule "is neither mandatory nor absolute." *Briley*, 2021 WL 269767 at *3, *citing Batiste v. Island Records Inc.*, 179 F.3d 217, 227 (5th Cir. 1999) (citations omitted).

28 U.S.C. §1367(c) enumerates the circumstances in which district courts may refuse to exercise supplemental jurisdiction. Under that statute, the district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if –

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.[4]

---

[4] 28 U.S.C. § 1367.

The Court's decision to retain supplemental jurisdiction is guided by "both the statutory provisions of 28 U.S.C. § 1367(c) and the balance of the relevant factors of judicial economy, convenience, fairness, and comity." *Batiste*, 179 F.3d at 227; *Parker & Parsley Petroleum Co. v. Dresser Ind.*, 972 F.2d 580, 585 (5th Cir. 1992). "No single factor" in the supplemental jurisdiction analysis is dispositive. *Parker*, 972 F.3d at 587. Courts must review all of the factors under the specific circumstances of a given case. *Id.*

In this case, the plaintiffs' state law claims do not raise novel or complex issues. Additionally, any state law claims which survive this Report predominate at this stage of the litigation, because all federal claims against Garber are being dismissed. *See, e.g., Mendoza v. United States*, 481 F. Supp. 2d 643, 647 (W.D. Tex. 2006), *adhered to on reconsideration*, 481 F. Supp. 2d 650 (W.D. Tex. 2007), and *aff'd sub nom. Mendoza v. Murphy*, 532 F.3d 342 (5th Cir. 2008), and *aff'd sub nom. Mendoza v. Murphy*, 532 F.3d 342 (5th Cir. 2008) (where court dismissed the federal claims and only supplemental state law claims remain, the state law claims predominated over the federal claims, and this factor weighed in favor of declining to exercise supplemental jurisdiction). Similarly, the third factor weighs in favor of remand, as all claims that gave the federal court jurisdiction have been dismissed and the only remaining claims against Garber are potential state law tort claims. *See Parker,* 972 F.2d at 585 ("Our general rule is to dismiss state claims when the federal

13

claims to which they are pendent are dismissed."), *citing Wong v. Stripling,* 881 F.2d 200, 204 (5th Cir.1989).

In addition to the statutory factors, the undersigned considers "judicial economy, convenience, fairness, and comity." *Smith v. Amedisys Inc.,* 298 F.3d 434, 447 (5th Cir.2002). This case has been in federal court for almost two years. Although that period of time may seem substantial, one full year of that two-year time period occurred during the Covid-19 pandemic, when all civil cases on the Court's docket were continued several times, and little, if any, discovery progressed in cases because of lock-down orders. This case has gone through two rounds of motions to dismiss filings – the first on the plaintiffs' first supplemental complaint and the second on their second supplemental complaint -- because the plaintiffs were permitted to amend their pleadings. As such, to date, the majority of the litigation has been spent refining pleadings and weeding out claims. No trial date has been set in this case, and there is no Scheduling Order in place. Additionally, proceeding with state claims in a Louisiana court appears convenient and fair.

Thus, after considering the foregoing factors, the undersigned recommends that this Court decline to exercise its supplemental jurisdiction over the plaintiffs' state law claims against Garber, and it is RECOMMENDED that these claims be DENIED AND DISMISSED WITHOUT PREJUDICE.

## CONCLUSION

Considering the foregoing,

IT IS RECOMMENDED that the Motion to Dismiss Second Amended Complaint [Doc. 87] filed by Mark Garber be GRANTED in its entirety, as follows:

IT IS RECOMMENDED that the motion to dismiss plaintiffs' individual and official lability claims against Garber be GRANTED, and that these claims be DENIED AND DISMISSED WITH PREJUDICE.

IT IS FURTHER RECOMMENDED that, to the extent they exist, the motion to dismiss plaintiffs' state law claims against Garber be GRANTED, and that these claims be DENIED AND DISMISSED WITHOUT PREJUDICE, as this Court declines to exercise its supplemental jurisdiction over these claims.

IT IS FURTHER RECOMMENDED that all claims against Lt. Shawn Segura, Lt. Joseph Miller, Sgt. Samantha White, Deputy Justin Broussard, Deputy Ashley Prejean, Deputy Christopher Kent, Deputy Ebony Touchet, Deputy Kristy Thibodeaux, Deputy Giles Reed, and LPN Ian Duplantis be DENIED AND DISMISSED WITH PREJUDICE, as plaintiffs have abandoned all claims against these defendants.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this

report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

**THUS DONE AND SIGNED** this 30th day of June 2021 at Lafayette, Louisiana.

CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE